UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL D. RANDALL,<br><br>    Plaintiff,<br><br>    v.<br><br>G. LEWIS,<br><br>    Defendant.<br>_____ / | No. C 06-4177 SI (pr)<br><br>**ORDER OF DISMISSAL WITH<br>LEAVE TO AMEND** |

## INTRODUCTION

Virgil D. Randall, currently an inmate at Salinas Valley State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review pursuant to 28 U.S.C. §1915A.

## BACKGROUND

Randall alleges in his complaint that he was given a 12-month term in the security housing unit ("SHU"). He states that he was transferred to a prison in Tehachapi, then to another prison in Sacramento, and then to Salinas Valley, apparently because he needed mental health care. Randall alleges that he "maxed out on my SHU term on 9/22/05" and was endorsed to Salinas Valley D-facility to receive mental health care. He alleges that defendant "G. Lewis retained me in ad-seg after my maxed out SHU term date," and that his mental health worsened. Complaint, p. 3.

Randall does not allege in the complaint in this action the length of time he was retained in ad-seg after his maximum SHU term. However, his complaint in Randall v. Younce, Case No. C 06-3866 SI, states that he was released from ad-seg on November 3, 2005, which would suggest that he was kept in the SHU for about six weeks after his 12-month SHU term ended.

**DISCUSSION**

A.  Standards

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

B.  Legal Claims

   1.  Due Process

Randall has sued defendant Lewis for keeping him the SHU for six weeks past the scheduled release date based on his 12-month SHU term. The legal theory that appears to fit this allegation is a claim for a due process violation. As discussed in more detail below, the complaint needs to be amended to allege facts showing that (a) conditions in the SHU were sufficiently harsh that due process was required by the federal constitution, (b) that Randall did not receive the process due him based on the reason he was in the SHU during those six weeks.

2

The first step in the due process analysis is determining whether <u>any</u> process was due. Interests that are procedurally protected by the Due Process Clause may arise from two sources-- the Due Process Clause itself and laws of the states. <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (examples of such severe conditions include involuntary medication with psychotropic drugs or a transfer to a mental hospital). Plaintiff's is not a case involving changes so severe as to implicate the Due Process Clause itself. Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." <u>See</u> <u>id.</u> at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence," <u>id.</u> at 484, 487. In determining whether a restraint is an "atypical and significant hardship," <u>Sandin</u> suggests that courts should consider whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; the duration of the condition; the degree of restraint imposed; and whether the discipline will invariably affect the duration of the prisoner's sentence. <u>See</u> <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078 (9th Cir. 2003); <u>see also</u> <u>Keenan v. Hall</u>, 83 F.3d 1083, 1089 (9th Cir. 1996), <u>amended</u>, 135 F.3d 1318 (9th Cir. 1998) (conditions of confinement which violate the Eighth Amendment amount to an "atypical and significant hardship," but condition need not rise to the level of an Eighth Amendment violation to require due process); <u>see, e.g.,</u> <u>Wilkinson v. Austin</u>, 125 S. Ct. 2384, 2394-95 (2005) (indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context"); <u>Sandin</u>, 515 U.S. at 485-86 (30-day placement in disciplinary segregation,

3

where conditions mirrored conditions imposed upon inmates in administrative segregation and protective custody, did not result in type of atypical, significant deprivation for which state might create liberty interest; nor did situation present case where state's action would inevitably affect duration of sentence); Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995) (no liberty interest implicated when inmate placed in disciplinary segregation for 14 days).

The complaint does not include any allegations that would suggest that the SHU conditions Randall faced amounted to the "atypical and significant hardship" necessary to support a due process claim. Being kept in the SHU for six weeks is not, on its face, an atypical and significant hardship for an inmate in prison. Leave to amend will be granted so that Randall may attempt to allege facts showing that the conditions of the SHU were so harsh and unpleasant that an inmate could not be subjected to those conditions for six weeks without first receiving procedural protections such as notice and a hearing.

The other potential problem with the complaint is that Randall may not understand that inmates may be housed in the SHU for two different reasons: inmates may be housed there for disciplinary segregation (such as the 12-month SHU term apparently was) and they also may be housed there for administrative segregation purposes. Randall's detention in the SHU after his 12-month term ended was not necessarily improper if he was kept there in administrative segregation and had been afforded the necessary procedural protections for being housed in administrative segregation. The amount of process due, if any, depended on the reason for his retention in ad-seg for the several weeks after his 12-month SHU term ended.[1] In sum, even if

---

[1] When prison officials initially determine whether a prisoner is to be segregated for administrative reasons, the following procedural protections are required: (1) an informal nonadversary hearing within a reasonable time after the prisoner is segregated, (2) the prisoner must be informed of the charges against him or the reasons segregation is being considered, and (3) the prisoner must be allowed to present his views. See Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986)

Greater procedural protections are required when prison officials initially determine whether a prisoner is to be segregated for disciplinary reasons. The procedural protections due in such a prison disciplinary proceeding include written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. Wolff v. McDonnell, 418 U.S. 539, 564-67 (1974).

4

an inmate can show that conditions were bad enough to amount to an atypical and significant hardship, that only means that he is constitutionally entitled to some procedural protections. The particular procedural protections that must be provided vary, depending on the reason for the inmate's current placement in the SHU. It cannot be determined from the complaint exactly what the nature of Randall's claim is, i.e., whether Randall is contending that (a) he was kept in the SHU for no reason at all after his 12-month term ended, (b) he was kept in the SHU for administrative segregation reasons but did not receive any or enough procedural protections, or (c) there was some other reason his retention in the SHU was unconstitutional. He should describe whether he was informed of the reason for his continued retention in the SHU after his 12-month term ended, and identify the procedural protections he was not given in connection with his placement there.

        2.     <u>Mental Health Problems</u>

Randall also states in his complaint that his mental health deteriorated while he was in the SHU. This allegation alone does not state a claim for relief against anyone.

Deliberate indifference to serious medical or mental health needs violates the Eighth Amendment's proscription against cruel and unusual punishment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>see generally</u> <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements). To prove that the response of prison officials to a prisoner's mental health needs was constitutionally deficient, the prisoner must establish (1) a serious mental health care need and (2) deliberate indifference to that need by prison officials. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

If Randall wants to try to state a claim concerning his mental health problems, he may attempt to do so in his amended complaint. To allege a claim based on the lack of attention to the mental health problems he suffered, he must identify the appropriate defendant(s), link each proposed defendant to his claim by allege facts showing what each of those persons did or

5

failed to do that amounted to deliberate indifference to his mental health needs.

## CONCLUSION

For the foregoing reasons, the complaint is dismissed because it fails to state a claim upon which relief may be granted. Plaintiff is granted leave to file an amended complaint no later than **September 1, 2006**. The amended complaint must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims and will supersede existing pleadings. See London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981) ("a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint.") Failure to file the amended complaint by the deadline will result in the dismissal of the action.

IT IS SO ORDERED.

Dated:   August 2, 2006

_____
SUSAN ILLSTON
United States District Judge